2026 PA Super 136

| | | |
|---|---|---|
| IN THE INTEREST OF: T.T.-S., A MINOR<br><br><br>APPEAL OF: T.T.-S., MINOR | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br><br>No. 2455 EDA 2025 |

Appeal from the Dispositional Order Entered August 28, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-JV-0000156-2025

BEFORE: BOWES, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.[*]

OPINION BY McLAUGHLIN, J.: **FILED JUNE 26, 2026**

Appellant T.T.-S. appeals from the dispositional order adjudicating him delinquent for violating 18 Pa.C.S.A. § 6110.1 (possession of a firearm by a minor). Appellant argues that the juvenile court erred in denying his motion to suppress evidence and admitting hearsay evidence. We find the suppression issue meritorious. We therefore vacate the dispositional order, reverse the order denying suppression, and remand for further proceedings.

The Commonwealth charged Appellant with possession of a firearm by a minor and other charges. The charges arose after a juvenile probation officer recovered a firearm during the search of a property. Previously, in a separate case, Appellant had been found to have committed retail theft and was on "interim" probation pending a dispositional hearing. The dispositional hearing

---

[*] Retired Senior Judge assigned to the Superior Court.

in that case had been deferred, and subsequently continued, at Appellant's request.

Before the adjudicatory hearing in this case, Appellant moved to suppress the firearm. He argued that the warrantless search was without consent, lacked probable cause, and went beyond the proper scope of a probation search. *See* N.T., 7/23/25, at 9. He further argued that the probation officer lacked authority under 42 Pa.C.S.A. § 6304(a)(1) to conduct the search. He maintained that Section 6304(a)(1) permits probation officers to conduct searches of children under their supervision as delinquent children, and Appellant was not a delinquent child at the time of the search.

The juvenile court held a hearing on the motion on July 23, 2025. It summarized the evidence at the suppression hearing as follows:

> [Appellant] was on interim probation pursuant to a deferred adjudication for retail theft. The Juvenile Enforcement Team (JET) unit monitored his social media after the homicide of Noah Scurry, identifying [Appellant] as a member of the Whackers gang. (N.T. 7/23/25, at 14-15). On January 27, 2025, a music video was posted on YouTube showing [Appellant] posing with multiple firearms. (N.T. 7/23/25, at 14-17; C-1).
>
> On January 28, 2025, Instagram posts depicted [Appellant] in a kitchen with two firearms on the counter. (N.T. 7/23/25, at 18-20; C-2, C-3). A Philadelphia Police Department firearms expert, Detective Speck, authenticated the firearms in the Instagram posts. (N.T. 7/23/25, at 19-20). [Appellant] reported to his assigned probation officer that he was living at 2510 North 31st Street. (N.T. 7/23/25, at 21). The JET unit verified this address and obtained supervisory approval from Nicole Hoffman for a property search based on reasonable

suspicion of firearm possession in violation of probation conditions. (N.T. 7/23/25, at 22; C-4).

On February 19, 2025, a team consisting of JET probation officers, Philadelphia police officers, and sheriff[']s deputies conducted the search. (N.T. 7/23/25, at 33). They knocked and announced their presence before entering. (N.T. 7/23/25, at 34-35). [Appellant] was found in the living room sitting on a couch and was detained for safety. When the couch was lifted, a firearm—a black Glock with a tan magazine and a machine gun conversion switch—was recovered underneath, loaded with 16 rounds plus one in the chamber. (N.T. 7/23/25, at 35-39, 48-49, 59-60; C-5, C-7, C-8). DNA analysis of the firearm's grip revealed a mixture from four individuals, with the likelihood that it included [Appellant's] DNA and three unrelated individuals being 2.711 million times more likely to occur than originating from four random individuals of the Caucasian population, 343.9 thousand times more likely to occur than originating from four unknown or unrelated African American individuals, and 4.164 million times more likely to occur than originating from four random individuals of the Hispanic population. (N.T. 7/23/25, at 85-86; C-13). The firearm was confirmed operable by the Firearms Identification Unit. (C12). [Appellant's] date of birth is [January 2008], making him a minor at the time. (C-14).

Trial Ct. Op., Oct. 22, 2025, at 3-4.

The court denied suppression. It immediately proceeded with the adjudicatory hearing and found Appellant delinquent of possession of a firearm by a minor. Following a later dispositional hearing, it placed Appellant on GPS monitoring with house restrictions and other conditions. This timely appeal followed.

Appellant raises the following issues:

A. Did the trial court err in denying Appellant's motion to suppress, where the firearm was found as a result of an unwarranted search, and Appellant was not under probation supervision as a delinquent child or pursuant to a consent

- 3 -

decree as required under 42 Pa.C.S. § 6304(a.1), but rather was on interim probation with his delinquency adjudication deferred?

B. Did the trial court err in denying Appellant's motion to suppress, where the juvenile probation department acted as an agent of the police and allowed the police department to conduct a full law enforcement search without a warrant, in violation of Appellant's rights as guaranteed for the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution?

C. Did the trial court err in denying Appellant's motion to suppress, where the juvenile probation department lacked reasonable suspicion to execute the search at this address, because there was no nexus between the alleged violation and the property searched, in violation of Appellant's rights as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution?

D. Did the trial court err in improperly admitting hearsay evidence and relying upon it to find Appellant constructively possessed the firearm, and was that error not harmless, as it was the sole evidence introduced that Appellant committed the act of Violation of the Uniform Firearms Act, 18 Pa.C.S. § 6110.1?

Appellant's Br. at 4-5 (answers of trial court omitted).

Appellant first challenges the denial of his motion to suppress. He argues that the search was unlawful because he was not subject to warrantless probationary searches under Section 6304(a.1)(1)(i). He maintains that that provision only authorizes probation officers to search the person and property of children "under their supervision as delinquent children or pursuant to a consent decree[.]" 42 Pa.C.S.A. § 6304(a.1)(1)(i). He contends that he was neither a delinquent child nor subject to a consent decree at the time of the search.

- 4 -

The Commonwealth responds that in its view, the juvenile court in the underlying case had authority to supervise Appellant in the time between the adjudicatory hearing and the dispositional hearing. For that reason, and because Appellant had requested the deferment of the dispositional hearing, the court properly imposed interim probation. The Commonwealth concludes that "[i]t is absurd for [Appellant] to ask for a deferred adjudication and interim [] probation, agree to the terms of said probation, and then argue that interim probation did not permit actual supervision." Commonwealth's Br. at 10-11.

When reviewing the denial of a suppression motion, we "determine whether the record supports the factual findings of the suppression court, and we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." *Interest of G.E.W.*, 233 A.3d 893, 898 (Pa.Super. 2020) (citation omitted). Where the court denied suppression, we "consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *In re B.T.*, 82 A.3d 431, 435 (Pa.Super. 2013) (citation omitted). We review the juvenile court's legal conclusions *de novo*. *See In re L.J.*, 79 A.3d 1073, 1080 n.6 (Pa. 2013).

Both the United States and Pennsylvania Constitutions protect against unreasonable searches and seizures. *See In re D.M.*, 781 A.2d 1161, 1163 (Pa. 2001). These protections apply equally to a search of the person or property of a juvenile. *See* 42 Pa.C.S.A. § 6304(a.1)(2), (4)(vi).

Section 6304 sets forth the powers and duties of probation officers under the Juvenile Act. They may search the person and property of a juvenile under their supervision either as a delinquent child or pursuant to a consent decree. *See id.* at § 6304(a.1)(1)(i). A "delinquent child" means a child who has been found both to have committed a delinquent act and to be in need of treatment, supervision or rehabilitation. *Id.* at § 6302.

A consent decree in a juvenile case is a "device for placing an allegedly delinquent child under the supervision of the probation department prior to, and as an alternative to, adjudication, thus avoiding the potential stigma attached to an adjudication of delinquency." *Commonwealth v. Wexler*, 431 A.2d 877, 881 (Pa. 1981) (citation omitted). It is a court order agreed to by all parties entered "after the filing of a petition and before the entry of an adjudication order[.]" 42 Pa.C.S.A. § 6340(a). When the court enters a consent decree, the proceedings are suspended and the court "continue[s] the child under supervision in his own home, under terms and conditions negotiated with the probation services and agreed to by all parties affected." *Id.* A consent decree remains in force for six months "unless the child is discharged sooner by probation services with the approval of the court," and may be extended for an additional six months. *Id.* at § 6340(c). If the child successfully completes the consent decree, the child cannot be subject to the same charges for the same conduct again, and the record may be expunged. *See id.* at § 6340(e), (f).

"Interim probation" is a term sometimes used to refer to the juvenile court's placing of a juvenile under the court's supervision pending a deferred dispositional hearing. After the court has found that the child committed a delinquent act, it is to proceed to a dispositional hearing within 20 days if the child is in detention, and within 60 days if the child is not detained, unless the deadline is extended by agreement of the parties. *Id.* at § 6341(b). The court may also "continue the hearing for a reasonable period to receive reports and other evidence bearing on the disposition or the need for treatment, supervision, or rehabilitation." *Id.* at § 6341(e). The court must make an order for the child's detention or "release from detention subject to [the] supervision of the court during the period of the continuance." *Id.*

Here, the juvenile court maintains that Appellant's "[i]interim probation with deferred adjudication is equivalent to supervision under a consent decree" and as such he was subject to probationary searches under Section 6304(a.1)(1)(i). Trial Ct. Op. at 6. We disagree.

An order placing on probation a child found to have committed a delinquent act, pending an adjudicatory hearing, is not the equivalent of a consent decree. A juvenile consent decree suspends the proceedings and puts the child under probation supervision with the hope of rehabilitation so that an adjudication of delinquency can be avoided. *See Wexler*, 431 A.2d at 881. In contrast, an interim probation order continues the dispositional hearing and enables the court to maintain supervision of the child until it can hold a

dispositional hearing. *See* 42 Pa.C.S.A. § 6341(e). The order here did not meet the provisions of Section 6340(a).

Appellant was not in either of the two categories of children subject to warrantless probation searches. Those categories are: 1) delinquent children and 2) children subject to a consent decree. *Id.* at § 6304(a.1)(1)(i). Here, at the time of the search, Appellant had not been adjudicated delinquent and, as above, he was not subject to a consent decree. The Commonwealth's suggestion that Appellant's request for and agreement to deferred adjudication and interim probation subjected him to warrantless searches is meritless. *See* Commonwealth's Br. at 10-11. We therefore vacate the dispositional order, reverse the order denying the motion to suppress, and remand for further proceedings. Because Appellant's first issue is dispositive, we do not address the remaining issues.

Dispositional order vacated. Order denying motion to suppress reversed. Case remanded for further proceedings. Jurisdiction relinquished.

President Judge Emeritus Ford Elliott joins the Opinion.

Judge Bowes files a Concurring Opinion.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/26/2026